**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JTMERC LLC,

                 *Plaintiff,*

     -against-

ANGLO IRISH BANK CORPORATION
LIMITED,

                 *Defendant.*

**COMPLAINT**

Case No.

11 CV 0605

Plaintiff, JTMERC LLC ("JTMERC"), by its attorneys, Law Office of Lee M. Albin, as

and for its complaint (the "Complaint") against defendant Anglo Irish Bank Corporation Limited

("Anglo Irish"), alleges as follows:

## NATURE OF THE ACTION

1.      In this action, JTMERC seeks to recover approximately $250,694.95 in monetary

damages, together with interest thereon, on account of Anglo Irish's deliberate, bad faith

attempts to deprive JMERC from its lawful purchase of the rights to such sum pursuant to a loan

sale agreement entered into between JTMERC and Anglo Irish.

## THE PARTIES

2.      JTMERC is a limited liability company formed and existing under the laws of the

State of New York, with a place of business at 110 Third Avenue, Suite 21C, New York, New

York  10003.

3.      Upon information and belief, Anglo Irish is a limited company formed and

existing under the laws of the Republic of Ireland, with a place of business at c/o Anglo Irish

New York Corporation, 222 East 41st Street, 24th Floor, New York, New York  10017.

## JURISDICTION AND VENUE

4.     JTMERC is a New York limited liability company with its principal place of business located in New York.  Anglo Irish is a limited company with its principal place of business located in the Republic of Ireland.  The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.  Pursuant to 28 U.S.C. § 1332, this court has diversity jurisdiction over this action.

5.     Pursuant to 28 U.S.C. § 1391(a)(2), venue lies in the Southern District of New York because JTMERC's principal place of business is located in that district, and a substantial part of the events or omissions giving rise to JTMERC's claims occurred in that district.

## FACTS

6.     According to its website, Anglo Irish is a business bank offering depository services in Ireland, the United Kingdom, the United States, Austria, Germany, Jersey and Isle of Man.  A copy of a printout of the relevant portion of the Anglo Irish website is annexed hereto as **Exhibit A**.

7.     On or about October 1, 2010, JTMERC and Anglo Irish entered into a Mortgage Loan Sale Agreement (the "Agreement"), whereby Anglo Irish agreed to sell, and JTMERC agreed to buy, a certain mortgage loan (the "Loan") and related loan documents (the "Loan Documents").  The purchase price of the Loan was $13,059,990.00.  A copy of the Agreement is annexed hereto as **Exhibit B**.

8.     Pursuant to the Agreement, the aggregate maximum principal balance under the Loan was $15,732,045.00.  The Loan was secured by, *inter alia*, mortgages against real property commonly known as 76 North 4th Street, Brooklyn, New York.

9.      As of both October 1, 2010 and October 25, 2010 (the date of closing under the Agreement), pursuant to the express terms of the Agreement, Anglo Irish represented and warranted to JTMERC that Anglo Irish:

      (i)    was the sole owner of the Loan and the Loan Documents, and that the Loan and Loan Documents were transferred free and clear of any and all liens, pledges, encumbrances, charges or security interests of any nature encumbering the Loan;

      (ii)   had not previously assigned, endorsed, pledged or otherwise transferred, granted or issued and interests in the Loan and/or the Loan Documents to any third party;

      (iii)  conveyed the Loan and Loan Documents to JTMERC free of any lien, encumbrance, right, interest or claim of any third party; and

      (iv)  had not waived, in writing or otherwise, any of the provisions of the Loan Documents or any of the obligations of the borrower thereunder.

10.     As of both October 1, 2010 and October 25, 2010, Anglo Irish represented and warranted to JTMERC that the principal amount outstanding from the borrower under the Loan was $15,731,480.60.

11.     As of September 30, 2010, pursuant to the Loan Documents, Anglo Irish was holding the sum of $250,694.95, in an escrow account established under the Loan Documents, as additional collateral against amounts due from the borrower on the Loan (the "Escrow Deposit"). A copy of a September 30, 2010 statement in the name of the borrower showing the Escrow Deposit is annexed hereto as **Exhibit C**.

12.     Pursuant to the terms of the Agreement, "[i]n the event [the borrower] shall make any payment or prepayment of principal on the Loan prior to the Closing Date, then [JTMERC] shall receive a credit against the [purchase price of the Loan] equal to the amount of such prepayment."

13.     The closing under the Agreement occurred on October 25, 2010, and JTMERC paid the purchase price for the loan, without a credit for the Escrow Deposit.  As of that date, all of Anglo Irish's rights under the Loan Documents were assigned to JTMERC.

14.     As of October 25, 2010, JTMERC became the owner of the right, title and interest in the Escrow Deposit.

15.     In the event that Anglo Irish applied the Escrow Deposit as a payment against the Loan prior to the October 25, 2010 closing, JTMERC was entitled to a credit against the purchase price in an amount equal to the Escrow Deposit.

16.     However, as of October 25, 2010, Anglo Irish reaffirmed its representation and warranty to JTMERC that the principal sum of $15,731,480.60 remained outstanding from the borrower under the Loan.

17.     Pursuant to the terms of the Agreement, Anglo Irish agreed "to indemnify [JTMERC] for any loss, damage, cost, expense, liability or claim directly or indirectly incurred by [JTMERC] (including reasonable attorneys' fees and expenses) as a result of any breach of any representation" set forth in the Agreement.

18.     At the closing, JTMERC notified Anglo Irish that it reserved all of its rights and remedies with respect to the Escrow Deposit, and demanded that the Escrow Deposit (along with all other sums held pursuant to the Loan Documents) be paid to JTMERC.

19.     Since the closing, JTMERC has made repeated demands upon Anglo Irish for the payment of the Escrow Deposit, each of which have been refused or ignored by Anglo Irish.

20.     The conduct of Anglo Irish in refusing to pay the Escrow Deposit to JTMERC has been willful, malicious, intentional and in bad faith.

## COUNT ONE
### (Breach of Contract)

21.     JTMERC repeats, restates and realleges each and every allegation contained in paragraphs "1" through "20" of this Complaint as if set forth herein.

22.     JTMERC has performed all of its obligations under the Agreement, including payment for all amounts properly due and owing to Anglo Irish.

23.     Anglo Irish has breached the representations and warranties it made to JTMERC under the Agreement.

24.     As a result of Anglo Irish's breach, JTMERC has been damaged in an amount to be proven at trial, but reasonably believed to be at least $250,694.95.

25.     Further, JTMERC is entitled to indemnification from Anglo Irish all the costs and expenses, including without limitation its reasonable attorneys' fees for the enforcement of its rights under the Agreement and the commencement and prosecution of this action, incurred as a result of Anglo Irish's breach.

26.     By reason of the foregoing, Anglo Irish is liable to JTMERC in an amount to be proven at trial, but reasonably believed to be at least $250,694.95, along with its reasonable attorneys' fees and other costs and expenses incurred as a result of Anglo Irish's breach of the Agreement.

{Client\003188\CON126\00287419.DOC;2}

## COUNT TWO
### (Money Had and Received)

27.     JTMERC repeats, restates and realleges each and every allegation contained in paragraphs "1" through "26" of this Complaint as if set forth herein.

28.     Anglo Irish received and is in possession of the Escrow Deposit, which sum belongs to JTMERC.

29.     Anglo Irish benefited from the receipt of such monies.

30.     Under principles of equity and good conscience, Anglo Irish should not be permitted to keep the Escrow Deposit.

31.     By reason of the foregoing, Anglo Irish is liable to JTMERC in an amount to be proven at trial, but reasonably believed to be at least $250,694.95.

## COUNT THREE
### (Conversion)

32.     JTMERC repeats, restates and realleges each and every allegation contained in paragraphs "1" through "31" of this Complaint as if set forth herein.

33.     JTMERC is the legal owner of the Escrow Deposit.

34.     Anglo Irish has exercised dominion over the Escrow Deposit and interfered with JTMERC's rights as the owner of the Escrow Deposit.

35.     By reason of the foregoing, Anglo Irish is liable to JTMERC in an amount to be proven at trial, but reasonably believed to be at least $250,694.95.

## COUNT FOUR
### (Commercial Bad Faith)

36.     JTMERC repeats, restates and realleges each and every allegation contained in paragraphs "1" through "35" of this Complaint as if set forth herein.

37.     Anglo Irish is a full service banking institution.

{Client\003188\CON126\00287419.DOC;2}

38.    Anglo Irish engaged in a pattern of bad faith conduct and intentional wrongdoing, with the calculated purpose of depriving JTMERC of its right to the Escrow Deposit.

39.    Despite being informed of conduct of its employees and representatives in withholding the Escrow Deposit, Anglo Irish has refused to authorize its release.

40.    The conduct of Anglo Irish is unlawful, dishonest and in bad faith.

41.    Furthermore, the conduct of Anglo Irish is willful, wanton, and intentional and with conscious disregard for the rights of JTMERC.

42.    Upon information and belief, at the time it entered into the Agreement with JTMERC, it was Anglo Irish's intent to defraud JTMERC of the benefit of the Escrow Deposit.

43.    By reason of the foregoing, Anglo Irish is liable to JTMERC for compensatory damages in an amount to be proven at trial, but reasonably believed to be at least $250,694.95, along with punitive damages in an amount to be determined at trial, but reasonably believed to be at least $1,500,000.00, along with its reasonable attorneys' fees for the commencement and prosecution of this action.

**WHEREFORE,** JTMERC demands judgment against Anglo Irish as follows:

(1)    On Count One, in an amount to be proven at trial, but reasonably believed to be at least $250,694.95, along with its reasonable attorneys' fees and other costs and expenses incurred as a result of Anglo Irish's breach of the Agreement;

(2)    On Count Two, in an amount to be proven at trial, but reasonably believed to be at least $250,694.95;

(3)    On Count Three, in an amount to be proven at trial, but reasonably believed to be at least $250,694.95;

(4)     On Count Four, compensatory damages in an amount to be proven at trial, but reasonably believed to be at least $250,694.95, along with punitive damages in an amount to be proven at trial, but reasonably believed to be at least $1,500,000.00, along with its reasonable attorneys' fees for the commencement and prosecution of this action;

(5)     The costs and disbursements of this action; and

(6)     Such other and further relief as the Court deems just and proper.

Dated:   Garden City, New York
         January 28, 2011

                                        **LAW OFFICE OF LEE M. ALBIN**
                                        *Attorneys for Plaintiff*

                                        By: _____
                                            Lee M. Albin (LA0697)
                                            666 Old Country Road
                                            Garden City, New York 11530
                                            (516) 794-4282

# EXHIBIT A

# Anglo Irish Bank 
## Group

**GROUP**
- Investors
- About Us
- Media Centre
- Services

Home > Services

## Our Services

Anglo Irish Bank is a focused business bank providing Business Banking, Treasury and Wealth Management services.

**Business Banking**

**Treasury**

Our Treasury Division offers a range of services to personal, corporate and institutional clients, including:

- Risk Management:
- Corporate Foreign Exchange/Interest Rate Management
- Liquidity Management/Corporate Institutional Deposits
- Personal Savings and Investments Products
- Designated Deposit Products
- Corporate Trade Finance Services
- Charities
- Professional Practices
- Corporate Trade Finance

We provide Treasury Services in Ireland, UK, US, Austria, Germany, Jersey and Isle of Man

Our Personal Savings team delivers an efficient and personalised service with very competitive interest rates.

We provide Personal Savings services in Ireland, UKand Isle of Man

**Wealth Management**

**More Information**

Anglo Irish Bank Corporation Limited, Registered in Ireland, Company Number 22045, Registered Office: Stephen Court, 18/21
St Stephen's Green, Dublin 2, Ireland. Anglo Irish Bank Corporation Limited is regulated by the Central Bank of Ireland. Anglo Irish Bank Corporation (International) PLC, Registered in the Isle of Man, Company Number 37910c, Registered Office: Jubilee Buildings, Victoria Street, Douglas, Isle of Man, IM1 2SH. Anglo Irish Bank Corporation (International) PLC is licensed by the Isle of Man Financial Supervision Commission.

# EXHIBIT B

# MORTGAGE LOAN SALE AGREEMENT

THIS MORTGAGE LOAN SALE AGREEMENT·is entered into as of __10/1__, 20 16 (the "Effective Date"), by and between ANGLO IRISH BANK CORPORATION LIMITED [[f/k/a ANGLO IRISH BANK CORPORATION PLC]], a limited company organized under the laws of the Republic of Ireland ("Seller"), and [[ __STAERC LLC__ ]], a [[ __New York LLC__ ]] ("Buyer").

## RECITALS

WHEREAS, subject to the terms and conditions set forth in this Agreement, Seller has agreed to sell to Buyer, and Buyer has agreed to purchase from Seller, the Loan and the Loan Documents (each as defined herein), and Buyer and Seller wish to prescribe the terms and conditions of such purchase and sale of the Loan;

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby expressly acknowledged, the parties hereto agree as follows:

## ARTICLE I

## DEFINITIONS

For purposes of this Agreement, the following terms shall have the meanings indicated. Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Loan Documents.

"Agreement" means this Mortgage Loan Sale Agreement, as amended or supplemented from time to time in writing by both parties hereto. References to Articles and·Sections refer to the Articles and Sections of this Agreement unless otherwise indicated.

"Borrower" means Steelworks N. 4th Development L.P., a New York limited partnership.

"Business Day" means a day other than (i) a Saturday or Sunday, or (ii) any day on which commercial banks in (a) New York, New York (b) Dublin, Ireland, are not open for general banking business.

"Closing" means the payment of the Loan Purchase Price by Buyer to Seller and the delivery of the Closing Documents by Seller to Buyer.

"Closing Date" means the day that is five (5) Business Days after the last day of the Due Diligence Period.

"Closing Documents" means the documents described in Section 6.01.

"Deposit" shall mean an amount equal to ten (10%) per cent of the Loan Purchase Price which shall be paid to Seller by either bank check or Purchaser's certified check simultaneously with the execution hereof.

"Due Diligence Period" means the period commencing on the later to occur of (a) the date on which Buyer receives copies of the Loan Documents (which may be prior to the Effective Date), or (b) the Effective Date, and ending at 5 p.m. Eastern Daylight Time on the day that is five (5) Business Days after such date.

"Effective Date" has the meaning set forth in the Preamble.

"Guarantor" means collectively any person who is a guarantor of the Loan or who is otherwise in any way a surety for the Borrower's obligations under the Loan.

"Loan" means that certain mortgage loan made by Seller to Borrower pursuant to the Loan Documents, having a maximum principal balance of $14,775,620.00 Acquisition Loan; $286,425.00 Second Mortgage Loan; and $670,000.00 Third Mortgage Loan.

"Loan Documents" means all agreements and documents evidencing, governing or securing or setting forth the terms of the Loan, all as described on Exhibit A attached hereto (and each Loan Document referred to herein shall mean such Loan Document as defined on Exhibit A).

"Loan Purchase Price" means the sum of $13,059,990.00, as adjusted by Section 2.04,  which shall be paid in cash by Buyer to Seller, less the Deposit, by wire transfer on the Closing Date in accordance with Section 2.02.

"Person" means any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

"Premises" has the meaning ascribed to such term in the Mortgage.

"Seller Related Party" shall mean any agent, advisor, representative, affiliate, employee, director, partner, member, beneficiary, investor, servant, shareholder, trustee or other Person acting on Seller's behalf or otherwise related to or affiliated with Seller.

## ARTICLE II

## PURCHASE AND SALE OF THE LOAN

Section 2.01. Agreement to Sell and Purchase Loan. Subject to the terms and conditions of this Agreement, on the Closing Date, Seller agrees to sell, and Buyer agrees to purchase, the Loan and the Loan Documents.

Section 2.02. Payment for Loan. No later than 12:00 p.m. Noon (Eastern Time) on the Closing Date, Buyer shall pay the Loan Purchase Price, less the Deposit, to Seller in immediately

-2-

available funds by wire transfer in accordance with the wire instructions set forth on Schedule I attached hereto.

Section 2.03. Delivery of Closing Documents. Delivery of the Closing Documents shall be made by Seller and Buyer on the Closing Date concurrently with payment by Buyer of the balance of the Loan Purchase Price.

Section 2.04. Prorations. With respect to the Loan, (i) any and all payments (other than payments of principal) made by Borrower which accrued or were due prior to the Closing Date from or on behalf of Borrower shall belong to Seller, and (ii) any and all payments (other than payments of principal) made by Borrower which are due on or after the Closing Date shall belong to Buyer. In the event Borrower shall make any payment or prepayment of principal on the Loan prior to the Closing Date, then Buyer shall receive a credit against the Loan Purchase Price equal to the amount of such prepayment. Any and all payments received by a party from or on behalf of Borrower which belong to the other party shall be held by such receiving party for the benefit of the other party and shall be delivered to such other party within five (5) Business Days after the receipt thereof. The obligations set forth in the preceding sentence shall survive the Closing. It is understood and agreed that if the Closing shall fail to occur for any reason whatsoever, then the provisions of this Section 2.04 shall be of no force or effect.

## ARTICLE III

## REPRESENTATIONS AND AGREEMENTS OF BUYER

Section 3.01. No Recourse, Warranty or Representation. Except as otherwise expressly provided in this Agreement, Buyer acknowledges that the Loan Documents for the Loan are being transferred to Buyer without recourse, warranty or representation, express or implied, of any kind, including, without limitation, any representations or warranties with respect to collectability, enforceability, title, documentation, priority of lien or value of collateral, and subject to the foregoing, Buyer accepts the Loan Documents being transferred to it on an "as is", "where is" basis with all faults and subject to any and all valid claims or defenses of all types (including the unenforceability of any of the Loan Documents) which may be asserted against Seller or Buyer by the Borrower or any Guarantor.

Section 3.02. Organization and Capacity. Buyer hereby represents to Seller that Buyer is a NY Lim. Liab. Co., duly organized, validly existing and in good standing under the laws of the state of its formation, and that Buyer is duly authorized to purchase the Loan and has the right to purchase the Loan without the consent of any third party. Buyer represents that it has full power and authority and has taken all action necessary to authorize it to enter into and perform its obligations under this Agreement and all other documents or instruments contemplated hereby. Buyer represents and warrants that this Agreement has been duly authorized, executed and delivered by Buyer, that this Agreement constitutes the legal, valid and binding obligation of Buyer, enforceable in accordance with its terms, subject to the following exceptions: (i) such enforceability may be subject to bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights generally; and (ii) such enforceability may be subject to the application of general equitable principles, including, without limitation, the principle that the availability of equitable remedies, such as specific



-3-

performance, injunctive relief or reformation, is subject to the discretion of the court before which any proceeding might be brought. Buyer represents and warrants that the execution, delivery and performance of this Agreement by Buyer does not conflict with the organizational documents of Buyer, or with any law, statute or regulation applicable to Buyer, or any mortgage, indenture or other contract or agreement to which Buyer is a party. Buyer represents and warrants that no litigation exists against Buyer which would have a material adverse effect on the transactions contemplated by this Agreement.

Section 3.03.  No Bankruptcy.  Buyer represents and warrants that it has sufficient assets to pay its liabilities as they come due, and no bankruptcy, insolvency, reorganization, liquidation or dissolution proceedings exist with respect to Buyer.

Section 3.04.  Additional Representations.  Buyer represents and warrants that Buyer is a sophisticated investor and has made (or will make prior to the expiration of the Due Diligence Period), independently, its own analysis of the Loan and the Loan Documents for the purpose of acquiring the Loan and the Loan Documents and has reviewed (or will review prior to the expiration of the Due Diligence Period) such documents and all financial and other information and materials as it considers appropriate to make its necessary evaluations. Buyer has conducted (or will conduct prior to the expiration of the Due Diligence Period) such due diligence review and analysis of the Loan, the Loan Documents, Borrower and the Premises and all financial and other information provided by Seller, together with such records as are generally available to the public from local, county, state and federal authorities as Buyer deemed necessary, proper or appropriate, in order to make a complete and informed decision with respect to the purchase of the Loan. Buyer acknowledges and agrees that Buyer has reviewed (or will review prior to the expiration of the Due Diligence Period) the Loan Documents, including all related due diligence materials, documentation and collateral and financial and other information, to Buyer's complete satisfaction, and Buyer is relying and will rely solely on (i) the representations and warranties of Seller set forth herein, and (ii) Buyer's own investigation and not on any other information provided or to be provided by Seller. Buyer acknowledges that the transfer of the Loan and the Loan Documents by Seller pursuant to this Agreement shall be irrevocable and without any recourse to Seller except with respect to a breach of any representation, warranty or covenant of Seller contained herein. In entering into this Agreement, Buyer has not relied and will not rely upon any oral or written information provided by Seller or Seller's personnel or agents, except otherwise provided herein. Buyer acknowledges that no employee or representative of Seller has been authorized to make, and that Buyer has not relied upon and will not rely upon, any statements or representations or warranties other than those specifically contained in this Agreement.

Section 3.05.  No Broker.  Buyer represents and warrants that neither Buyer nor any of its affiliates has dealt or negotiated with, or engaged on its own behalf or for its benefit, any Person as an agent, broker, dealer or otherwise who is entitled to a commission or fee in connection with the purchase of the Loan and the Loan Documents for the Loan by Buyer. Buyer hereby agrees to, and hereby does, indemnify and hold Seller harmless from and against any and all claims, demands, causes of action, losses, costs and expenses (including attorneys' fees) and other liabilities arising from Buyer's breach of the representations and warranties contained in this Section 3.05.

-4-

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES OF SELLER

Section 4.01. Representations and Warranties. Seller represents and warrants to Buyer with respect to itself and the Loan, as of the date hereof and as of the Closing Date, the following:

(a) Seller is a limited company organized under the laws of the Republic of Ireland, and Seller is duly authorized to sell the Loan and has the right to sell the Loan without the consent of any third party which has not been obtained.

(b) Seller has full power and authority and has taken all action necessary to authorize it to enter into and perform its obligations under this Agreement and all other documents or instruments contemplated hereby. This Agreement has been duly authorized, executed and delivered by Seller, and constitutes the legal, valid and binding obligation of Seller, enforceable in accordance with its terms, subject to the following exceptions: (i) such enforceability may be subject to bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights generally and (ii) such enforceability may be subject to the application of general equitable principles, including, without limitation, the principle that the availability of equitable remedies, such as specific performance, injunctive relief or reformation, is subject to the discretion of the court before which any proceeding might be brought.

(c) The execution, delivery and performance of this Agreement by Seller does not conflict with the organizational documents of Seller, or with any law, statute or regulation applicable to Seller, or any mortgage, indenture or other contract or agreement to which Seller is a party.

(d) Neither Seller nor any of its affiliates has dealt or negotiated with, or engaged on its own behalf or for its benefit, any Person as an agent, broker, dealer or otherwise who is entitled to a commission or fee in connection with the sale of the Loan and the Loan Documents by Seller.

(e) The outstanding principal balance of the Loan being conveyed by Seller as of the date hereof is $15,731,480.60.

(f) Seller is the sole owner, and on the Closing Date, will be the sole owner, of the Loan Documents and the related rights thereto. The Loan and the Loan Documents are assignable and will be transferred free and clear of any and all liens, pledges, encumbrances, charges or security interests of any nature encumbering the Loan. Seller has not previously assigned, endorsed, pledged or otherwise transferred, granted or issued any interests in the Loan and/or the Loan Documents to any third party, nor has it agreed to do so under any circumstances. The conveyance of the Loan and the Loan Documents to Buyer pursuant to this Agreement shall be free of any lien, encumbrance, right, interest or claim of any third party.

(g) Interest payable under the Loan Documents has been paid through June 30, 2010,

-5-

(h)     Exhibit A is a true, correct, and complete listing of the Loan Documents. The Loan Documents have not been further amended, modified, supplemented or restated, except as set forth on Exhibit A attached hereto. Lender has not initiated any litigation with respect to the Loan or the Loan Documents, nor has Lender received any notice of any lawsuit initiated by Borrower or Guarantor.

(i)     The Loan and the Loan Documents are not cross-defaulted with any other loan.

(j)     The Premises does not secure any loan (other than the Loan) from Seller to Borrower or to any other affiliate of Borrower.

(k)     There have been no waivers (written or otherwise) of any provisions of the Loan Documents, nor any of the obligations of borrower thereunder.

Section 4.02. Further Assurances. Seller shall take such other reasonable actions, and furnish such other documents or instruments as may be reasonably requested by Buyer in order to effectuate the purposes of this Agreement and the transfer of the Loan, and the Loan Documents. Seller hereby agrees to indemnify Buyer for any loss, damage, cost, expense, liability or claim directly or indirectly incurred by Buyer (including reasonable attorneys' fees and expenses) as a result of a breach of any representation set forth herein.

## ARTICLE V

## DUE DILIGENCE PERIOD; CONDITIONS PRECEDENT

Section 5.01. Due Diligence.

(a)     On or prior to the Effective Date, Seller shall deliver to Buyer a copy of the Loan Documents for Buyer's review.

(b)     Prior to the expiration of the Due Diligence Period, Buyer may, upon written notice to Seller (which notice may be given by facsimile or electronic mail), terminate this Agreement for any reason or no reason and upon receipt of such notice, Seller shall return the Deposit to Purchaser. If Buyer fails to terminate this Agreement prior to the expiration of the Due Diligence Period, then Buyer shall be deemed to have approved its due diligence investigation of the Loan and the Premises, the Deposit shall be non-refundable and Buyer shall be obligated to purchase the Loan, subject only to the satisfaction of Buyer's conditions to close set forth in Section 5.03 below.

Section 5.02. Conditions Precedent to Obligations of Seller. The obligation of Seller to sell, transfer and assign its interest in the Loan and the Loan Documents to Buyer on the Closing Date is subject to Seller's satisfaction, in its sole and absolute discretion, that all of the following conditions precedent have been fulfilled:

(a)     The representations and warranties of Buyer set forth in Article III shall be true and correct in all material respects on and as of the Closing Date.

-6-

(b)     At Closing, Buyer shall have paid Seller the balance of the Loan Purchase Price in the manner required by Section 2.02.

(c)     Buyer shall have assumed all obligations of Seller with respect to the Loan accruing after the Closing Date, and shall have delivered to Seller any documentation executed by Buyer described in Section 6.01.

Section 5.03.  Conditions Precedent to Obligations of Buyer.  The obligation of Buyer to purchase and accept from Seller its interest in the Loan and the Loan Documents on the Closing Date is subject to Buyer's satisfaction, in its sole and absolute discretion, that all of the following conditions precedent have been fulfilled:

(a)     The representations and warranties of Seller set forth in Article IV shall be true and correct in all material respects on and as of the Closing Date; and

(b)     Seller shall have delivered to Buyer the executed documentation described in Section 6.01.

## ARTICLE VI

## CLOSING DOCUMENTS

Section 6.01.  Assignment and Delivery of Loan Files With Respect to Loan.  On the Closing Date, Seller shall deliver to Buyer the following documents or instruments in accordance herewith:

(a)     the original "Note" specified on Exhibit A attached hereto, along with an allonge to such Note (or to each of the instruments constituting such Note), endorsed by Seller to Buyer, in substantially the form attached as Exhibit B hereto;

(b)     an assignment (in recordable form) executed by Seller to Buyer of all right, title and interest of Seller in and to the "Mortgage" specified on Exhibit A attached hereto, in substantially the form attached as Exhibit C hereto;

(c)     an assignment (in recordable form) executed by Seller to Buyer of all right, title and interest of Seller in and to the "Assignment of Leases and Rents" specified on Exhibit A attached hereto, in substantially the form attached as Exhibit D hereto;

(d)     an assignment to Buyer of all right, title and interest of Seller in and to all unrecorded Loan Documents and any insurance policies relating to the Loan, in substantially the form attached as Exhibit E hereto;

(e)     UCC-3 Financing Statements (in recordable form) assigning to Buyer all Seller's right, title and interest in all UCC-1 Financing Statements filed with respect to the Loan;

(f)     the "Title Policy" specified on Exhibit A attached hereto; and

-7-

(g)     the original or all other Loan Documents specified on Exhibit A attached hereto not otherwise specified in clauses (a) through (f) (inclusive), above.

Section 6.02. Responsibility for Recording.  Buyer shall be solely responsible for recording or filing any of the documents delivered by Seller pursuant to Section 6.01.

Section 6.03. Notice to Borrower.  Upon Closing, Buyer and Seller shall deliver a joint notice to Borrower of the sale of the Loan substantially in the form of Exhibit F attached hereto.

## ARTICLE VII

## MISCELLANEOUS

Section 7.01. Entire Agreement.  This Agreement constitutes the entire agreement between Seller and Buyer with respect to the purchase of the Loan and supersedes all other prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof.

Section 7.02. Governing Law.  THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.

Section 7.03. Amendment.  No amendment or other modification of this Agreement shall be effective except pursuant to a written agreement executed by the duly authorized representatives of the parties hereto.

Section 7.04. Notices.  No notice or other communication shall be deemed given unless sent in any of the manners, and to the Persons, specified in this Section.  All notices and other communications hereunder shall be in writing and shall be deemed given (a) upon receipt if delivered personally (unless subject to clause (b)) or if mailed by registered or certified mail, (b) at noon on the date after dispatch if sent by overnight courier or (c) upon the completion of transmission (which is confirmed by telephone or by a statement generated by the transmitting machine) if transmitted by telecopy or other means of facsimile which provides immediate or near immediate transmission to compatible equipment in the possession of the recipient, in any case to the parties at the following addresses or telecopy numbers (or at such other address or telecopy number for a party as will be specified by like notice).

If to Seller:          Anglo Irish Bank Corporation Limited
                       c/o Anglo Irish New York Corporation
                       222 East 41st Street, 24th Floor
                       New York, New York 10017
                       Attention: Terence F. Baydala, Executive Vice President
                       Telecopier: (212) 503-3033

-8-

with copies to:          Anglo Irish Bank Corporation Limited
                         18/21 St. Stephen's Green
                         Dublin, 2
                         Ireland
                         Attention: Client Administration North America
                         Telecopier: 011-353-1-616-2252

and to:                  Troutman Sanders LLP
                         405 Lexington Avenue
                         New York, New York 10174
                         Attention: Mitchell Fenton
                         Telecopier: (212) 704-6288

If to Buyer:             Flink A Associates
                         555 5th Avenue, 14th Floor
                         NY NY 10017
                         Attention: Robert Flink
                         Facsimile: 212-986-5316

Section 7.05. <u>Beneficiaries; Binding Effect; Limitation on Assignment</u>.

(a)     Nothing in this Agreement, express or implied, is intended for or shall confer upon any other Person any legal or equitable rights, benefits, claims or remedies of any nature whatsoever or by reason of this Agreement or any provisions contained herein, it being the intention of the parties hereto that this Agreement, the obligations and statements of responsibilities hereunder, and all other conditions and provisions hereof are for the sole and exclusive benefit of Seller and Buyer, and their successors and permitted assigns, and for the benefit of no other Person.

(b)     This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, legal representatives and assigns. Buyer may not assign or otherwise transfer this Agreement (or any interest of Buyer herein or rights of Buyer hereunder) except to an affiliate of Buyer. Notwithstanding any such transfer to an affiliate of Buyer, Buyer shall remain obligated with respect to all representations, warranties, covenants, indemnities and other provisions under this Agreement as if no such transfer had occurred; provided, however, that such representations, warranties, covenants, indemnities and other provisions shall be construed to refer to such transferee as well as to Buyer.

Section 7.06. <u>Limitation of Damages</u>. In no event shall either party hereto be liable to the other in contract (with the exception of enforcing the terms of this Agreement or with respect to a breach of a representation or warranty set forth herein), tort, strict liability or any other cause of action for any consequential, incidental or speculative damages arising out of this Agreement or the subject matter hereof. In the event of a default by Buyer under this Agreement, Seller shall, as its sole remedy, have the right to terminate this Agreement and retain the Deposit as liquidated damages. The Seller and Buyer agree that it would be difficult or impossible to accurately ascertain the amount of Seller's damages.

-9-

Section 7.07. <u>Expenses</u>.  Except as otherwise provided in this Agreement, each party hereto agrees to pay all costs, fees and expenses which it has incurred in connection with or incidental to the matters contained in this Agreement.

Section 7.08. <u>Protection of Confidential Information</u>.  Buyer and Seller shall each keep confidential and shall not divulge to any Person, without the other Person's prior written consent, any terms of, or the existence of, this Agreement, except to the extent it is appropriate or required for Buyer or Seller, as applicable, to do so in working with legal counsel, auditors, taxing authorities or other federal or state governmental agencies or in connection with a merger or acquisition or if otherwise required by law or court order or in connection with such Person's enforcement of remedies in connection herewith.

Section 7.09. <u>Waiver of Jury Trial</u>.     BUYER AND SELLER HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION, SUIT OR PROCEEDING ARISING FROM OR RELATED TO THIS AGREEMENT.

Section 7.10. <u>Jurisdiction and Service of Process</u>.  The parties hereto agree to submit to personal jurisdiction in the State of New York in any action or proceeding arising out of this Agreement and, in furtherance of such agreement, the parties hereby agree and consent that, without limiting other methods of obtaining jurisdiction, personal jurisdiction over the parties in any such action or proceeding may be obtained within or without the jurisdiction of any court located in New York, and that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the parties by registered or certified mail to or by personal service at the last known address of the parties, whether such address be within or without the jurisdiction of any such court. Each party hereto hereby expressly waives any and all rights that it may have to make any objections based on jurisdiction or venue to any action brought to enforce this Agreement in any such court in accordance with the above provisions.

Section 7.11. <u>Multiple Originals; Counterparts</u>.  Numerous copies of this Agreement may be executed by the parties hereto. Each such executed original copy shall have the full force and effect of an original executed instrument. This Agreement may be executed in counterparts, each of which shall be an original or facsimile and all of which together shall constitute one and the same instrument.

Section 7.12. <u>No Recourse</u>.  Buyer acknowledges and agrees that, in respect of the Loan and the Loan Documents for the Loan, Buyer may ultimately receive from Borrower an amount less than the Loan Purchase Price and that, except as set forth herein, Buyer shall have no recourse against Seller or any Seller Related Party for such deficiency of the principal, interest, fees, expenses or any other amounts owing under the Loan, or under or pursuant to any of the Loan Documents or any other document received in connection therewith. No shareholder or agent of Seller, nor any Seller Related Parties shall have any personal liability, directly or indirectly, under or in connection with this Agreement or any agreement made or entered into under or pursuant to the provisions of this Agreement, or any amendment or amendments to any of the foregoing made at any time or times, heretofore or hereafter, and Buyer and its successors and assigns and, without limitation, all other Persons, shall look solely to Seller's assets for the

-10-

payment of any claim or for any performance, and Buyer, on behalf of itself and its successors and assigns, hereby waives any and all such personal liability. This Section 7.12 shall survive the Closing or a termination of this Agreement.

Section 7.13. No Implied Waivers. No failure or delay of either party in the exercise of any right or remedy given to such party hereunder or the waiver by any party of any condition hereunder for its benefit (unless the time specified in this Agreement for exercise of such right or remedy has expired) shall constitute a waiver of any other or further right or remedy nor shall any single or partial exercise of any right or remedy preclude other or further exercise thereof or any other right or remedy. No waiver by either party of any breach hereunder or failure or refusal by the other party to comply with its obligations shall be deemed a waiver of any other or subsequent breach, failure or refusal to so comply.

Section 7.14. Severability. In the event that any of the provisions of this Agreement shall for any reason be held to be invalid, illegal or unenforceable, such invalidity, illegality or unenforceability shall not affect any other provision hereof and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

Section 7.15. Survival. The representations, warranties and covenants set forth in this Agreement of Seller shall survive the Closing Date and shall continue to bind Seller for a period of twelve (12) months after the Closing Date.

Section 7.16. Time of the Essence. Time is of the essence with respect to each and every provision of this Agreement. Whenever any action must be taken (including the giving of notice or the delivery of documents) under this Agreement during a certain period of time (or by a particular date) that ends (or occurs) on a non-Business Day, then such period (or date) shall be extended until the next succeeding Business Day.

[SIGNATURES COMMENCE ON THE FOLLOWING PAGE]

-11-

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the date first written above.

SELLER:

ANGLO IRISH BANK CORPORATION LIMITED

By: _____
Name: Terence F. Bay lala
Title: SVP

By: _____
Name: Simon Seggers
Title: SVP

Signature Page to Mortgage Loan Purchase Agreement

[[_____]]

NEWYORK01 1416486v2 035276-TBA
NewYork01 1424017v1 035276.000025

**BUYER:**

[[_____ JT MERC _____]], a
[[_____ LLC _____]]

By: _____

Name: Jacob Toll
Title: Member

Signature Page to Mortgage Loan Purchase Agreement
[[_____]]

NEWYORK01 1416486v2 035276-TBA
NewYork01 1424017v1 035276.000025

# EXHIBIT C

**Anglo Irish Bank Corporation Limited**

Stephen Court
18/21 St. Stephen's Green
Dublin 2.
Ireland

Tel: +353 1 6162000
BIC/SWIFT: ANGOIE2D
Website: www.angloirishbank.com

Fax: +353 1 6162481 (Banking)
Fax: +353 1 6162467 (Treasury)

# CONFIRMATION



**ANGLO IRISH BANK**

Post to

STEELWORKS N.4TH DEVELOPMENT. LP
C/O WILLIAMSBURG STRATHOR LLC
126 FIFTH AVENUE  SUITE 10D
NEW YORK  NEW YORK 100:1
USA

**Date**
30/09/2010

**Account Details**

STEELWORKS N.4TH DEVELOPMENT, LP
Account Title : FUTURE ADVANCE ACCOUNT
Client Number: 511825
Account Number: 81009544
IBAN:IE66ANGO99022081009544

**Account Manager**

BANKING TEAMS DUBLIN

**Account Type**
USD 100% ACCESS ACCOUNT

| PARTICULARS | VALUE DATE | DEBIT | CREDIT | BALANCE | RATE |
|---|---|---|---|---|---|
| CREDIT INTEREST | 30/09/2010 | | 118.68 | 250,694.95 | .500% |
| RATE CHANGE .55000 TO .50000 | 30/09/2010 | | | 250,694.95 | .500% |
| DATE CHANGE 30/09/2010 TO 29/10/2010 | 30/09/2010 | | | 250,694.95 | .600% |

| | |
|---|---|
| Current Balance | 250,694.95 USD |
| Next Review Date | 29/10/2010 |
| Gross Interest due at Next Review Date | 100.97 USD |
| Retention Tax | .00 USD |
| Total due at Next Review Date | 250,795.92 USD |

THANK YOU FOR BANKING WITH US

The items and balance shown on this confirmation should be verified and the Bank notified promptly of any discrepancy.
Anglo Irish Bank Corporation Limited is regulated by the Financial Regulator.