UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
JTMERC LLC,

        Plaintiff,

   -against-

ANGLO IRISH BANK CORPORATION
LIMITED,

        Defendant.
------------------------------------- X

Docket No. 11-cv-0605-NRB

# DEFENDANT ANGLO IRISH BANK CORPORATION LIMITED'S MEMORANDUM OF LAW IN OPPOSITION TO <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

I.  JTMERC FAILS TO MEET THE LEGAL STANDARD FOR A GRANT OF SUMMARY JUDGMENT .................................................................................. 4

    A.  The Legal Standard For Summary Judgment ........................................... 4

    B.  Questions Of Material Fact Exist ............................................................. 5

II. SUMMARY JUDGMENT CANNOT BE GRANTED BECAUSE THERE HAS BEEN NO DISCOVERY IN THIS CASE ................................................................ 8

III. JTMERC IS NOT ENTITLED TO ATTORNEYS' FEES ............................................. 9

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*American Federation of Grain Millers, AFL-CIO, et al. v. Int'l Multifoods Corp.*,
116 F.3d 976 (2d Cir.1997) .......................................................................................................7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ......................................................................................................... 4, 5, 8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..................................................................................................................8

*Citibank, N.A. v. 666 Fifth Ave. Ltd. Partnership*,
2 A.D.3d 331 (1st Dep't 2003) .................................................................................................7

*Consarc Corp. v. Marine Midland Bank, N.A.*,
996 F.2d 568 (2d Cir. 1993) ......................................................................................................7

*Deutsche Bank Sec., Inc. v. Rhodes*,
578 F.Supp. 2d 652 (S.D.N.Y. 2008) ........................................................................................4

*Dolphin Direct Equity Partners, LP v. Interactive Motorsports and Entertainment Corp.*,
No. 08 cv. 1558, 2009 U.S. Dist. LEXIS 21938 (S.D.N.Y. Feb. 27, 2009) ...........................10

*Eastway Construction Corp. v. City of New York*,
762 F.2d 243 (2d Cir. 1985) ......................................................................................................4

*First National Bank of Arizona v. Cities Services Co.*,
391 U.S. 253, 88 S.Ct. 1575 (1968) ..................................................................................4 n.2

*Kleinman v. Vincent*,
No. 90 cv. 5665, 1991 U.S. Dist. LEXIS 201 (S.D.N.Y. Jan. 8, 1991) ....................................8

*Kump v. Xyvision, Inc.*,
733 F.Supp. 554 (E.D.N.Y. 1990) .............................................................................................6

*Rose v. Spa Realty Associates*,
42 N.Y.2d 338 (1977) ................................................................................................................6

*Seiden Associates, Inc. v. ANC Holdings, Inc.*,
959 F.2d 425 (2d Cir. 1992) ......................................................................................................7

*Silver Air v. Aeronautic Development Corp.*,
656 F. Supp. 170 (S.D.N.Y.1987) ........................................................................................6 n.3

*United States v. J.B. Williams Co.*,
498 F.2d 414 (2d Cir. 1974) ................................................................................................4 n.2

*W.A. Knight v. U.S. Fire Insurance Co.*,
    804 F.2d 9 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987)..................................................4

*Wells Fargo Bank Northwest, N.A. v. TACA Int'l Airlines, S.A.*,
    247 F. Supp. 2d 352 (S.D.N.Y. 2002)................................................................................8

**STATUTES AND OTHER AUTHORITIES**

N.Y. General Obligations Law § 15-301(1) ...........................................................................6

Fed. R. Civ. P. 56(b) ................................................................................................................8

Fed. R. Civ. P. 56(c) ................................................................................................................4

Fed. R. Civ. P. 56(d) ........................................................................................................8 n.5

Fed. R. Civ. P. 56(f) ................................................................................................................8

## PRELIMINARY STATEMENT

Defendant Anglo Irish Bank Corporation Limited ("Anglo Irish") respectfully submits this memorandum of law in opposition to the motion for summary judgment filed by plaintiff JTMERC LLC ("JTMERC") on its cause of action for breach of contract.

In this motion, JTMERC asserts that the intent of the parties was "crystal clear" that JTMERC would be entitled to the funds at issue in this case. JTMERC, however, wholly ignores its own course of conduct and communications which demonstrate that this is simply not the case and that Anglo Irish's retention of the funds was entirely consistent with the parties' intent and in fact was influenced by JTMERC's actions.

## STATEMENT OF FACTS

This action concerns a mortgage loan sale agreement, dated October 1, 2010, (the "Agreement"), that Anglo Irish entered into with JTMERC. The Agreement is for the sale of a mortgage loan (the "Loan") secured by real property commonly known as 76 North 4th Street, Brooklyn, New York, by Anglo Irish, to JTMERC, for the price of $13,059,990.00 (the "Purchase Price"). At a meeting on October 6, 2010 during which the parties each signed the Agreement, Anglo Irish Senior Vice President Terence Baydala ("Baydala") advised Jacob Toll ("Toll") of JTMERC that Anglo Irish had been holding a $250,694.95 escrow deposit (the "Escrow Deposit"). *See* Affidavit of Terence Baydala, sworn to May 27, 2011 ("Baydala Aff."), ¶ 5.

The following day, on October 7, 2010, in an email from Baydala to Toll, Anglo Irish again advised JTMERC of the existence of the Escrow Deposit. Anglo Irish further advised that it had the right to apply the amount of the Escrow Deposit against the outstanding amount of the Loan, and that it had so applied the Escrow Deposit. Baydala Aff., ¶ 6. Later that same day, Toll responded to Baydala's e-mail. In his e-mail, Toll made absolutely no objection to the

Escrow Deposit being applied to the Loan balance. Indeed, Toll enthusiastically affirmed that the information Anglo Irish gave him was helpful to JTMERC in its due diligence as it proceeded towards closing.[1] *Id.*, ¶ 7.

Through their course of conduct and communications with Anglo Irish, JTMERC strongly indicated that JTMERC agreed that the application of the Escrow Deposit would not affect the Purchase Price. *Id.*, ¶ 8. JTMERC made clear that it did not consider the face amount of the Loan to be of great significance to the transaction. *Id.*, ¶ 9. JTMERC indicated that its primary interest was in the true underlying value of the Property, which was lower than the outstanding amount of the note. *Id.*. At no time between October 6, 2010 and October 25, 2010, the date on which the Agreement closed, did JTMERC demand a reduction in the Purchase Price, or indicate in any way that it thought its Purchase Price should be reduced; or did it express any objection to Anglo Irish's application of the Escrow Deposit against the Loan balance. *Id.*, ¶ 10.

Thus, JTMERC lulled Anglo Irish into believing that the parties agreed on how the Escrow Deposit would be treated. *Id.*, ¶ 11. Reasonably relying on JTMERC's conduct and communications with Anglo Irish, Anglo Irish believed that JTMERC clearly understood that the amount of the Escrow Deposit that Anglo Irish had applied against the Loan balance would <u>not</u> reduce the $13,059,990 purchase price that JTMERC was to pay for the Loan. *Id.*

At the closing on October 25, 2010, Anglo Irish again advised JTMERC that it had applied the Escrow Deposit against the Loan balance, and asked JTMERC to sign a letter acknowledging that the Loan balance had been reduced to $15,480,785.65 from $15,731,480.60, due to the application of the Escrow Deposit, and which would confirm the parties' prior understanding that this would not reduce the purchase price of the Loan. *Id.*, ¶ 12. JTMERC refused to sign the letter but went ahead with the closing. *Id.*, ¶ 13. It was only at the closing on

---

[1] In its moving papers, JTMERC does not include this email nor does it refer to it.

2

October 25, 2010 that JTMERC claimed for the first time that it had any right to the Escrow Deposit through a handwritten letter delivered to Anglo Irish. *Id.*, ¶ 14. Although the handwritten letter bore the date October 22, 2010, Anglo Irish had not received the letter until October 25, 2010 and there is no evidence the letter was actually written or sent prior to the closing. *Id.*

## ARGUMENT

JTMERC seeks summary judgment on its first cause of action, for breach of contract, alleging that Anglo Irish owes JTMERC the amount of the Escrow Deposit. JTMERC contends that there are no issues of fact warranting trial despite there having been absolutely no discovery conducted in this action. As set forth below, there is indeed a question of fact as to whether the parties intended that the application of the Escrow Deposit to the Loan balance would affect the Purchase Price paid by JTMERC for the Loan. The limited record before the Court demonstrates that the parties agreed that the Escrow Deposit would not affect the Purchase Price and thus JTMERC has no basis for its breach of contract claim. Additionally, the contractual language in the Agreement is far from "crystal clear", as JTMERC characterizes it, with respect to the handling of the Escrow Deposit, and indeed does not contain any reference to funds such as the Escrow Deposit which did not fall within the terms of the Agreement. Further, summary judgment cannot be granted prior to discovery in this case as Anglo Irish must have the opportunity to discover further evidence showing that the parties agreed that the Escrow Deposit would not affect the Purchase Price.

I.  **JTMERC FAILS TO MEET THE LEGAL STANDARD FOR A GRANT OF SUMMARY JUDGMENT**

    A.  **The Legal Standard For Summary Judgment**

JTMERC has failed to establish that there is "no genuine issue of material fact." *See* Fed. R. Civ. P. 56(c); *Deutsche Bank Sec., Inc. v. Rhodes*, 578 F.Supp. 2d 652, 659 (S.D.N.Y. 2008). Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." It is well settled that summary judgment is a "drastic device, since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury. Accordingly, the moving party bears a heavy burden of demonstrating the absence of any material issues of fact." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985) (internal quotations and citations omitted).[2]

"In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *W.A. Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986)). As the Supreme Court observed in *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986):

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court

---

[2] The same standards apply, and the Court's function is the same, whether the ultimate trier of fact is to be the judge or a jury. *United States v. J.B. Williams Co.*, 498 F.2d 414 (2d Cir. 1974); *see First National Bank of Arizona v. Cities Services Co.*, 391 U.S. 253, 88 S.Ct. 1575 (1968).

may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial. (citations omitted).

### B.  Questions Of Material Fact Exist

JTMERC claims that Anglo Irish cannot demonstrate a genuine issue of material fact establishing that a reasonable jury could decide that Anglo Irish is entitled to retain the Escrow Deposit. However, in its Answer to the Complaint, Anglo Irish, as part of its affirmative defenses, asserts that JTMERC acquiesced to the application of the Escrow Deposit. As set forth in the Affidavit of Terence Baydala, JTMERC was advised of the Escrow Deposit and its application to the Loan balance, prior to closing, and never objected to the Escrow Deposit being applied to the Loan balance, prior to closing. Through its course of conduct and communications prior to the closing, JTMERC strongly indicated that it agreed that it had no right to claim the Escrow Deposit. Thus, Anglo Irish reasonably believed that the parties' intentions were that Anglo Irish could retain the Escrow Deposit without reducing the purchase price or reimbursing JTMERC.

Moreover, the scant evidence JTMERC attempts to put forward as proof that it did not agree with Anglo Irish about the Escrow Deposit is highly dubious. JTMERC points to a certain handwritten letter in which it purported to reserve its rights and demanded the Escrow Deposit. *See* Affidavit of Jacob Toll, sworn to May 9, 2011 ("Toll Aff."), ¶ 11. Although the handwritten letter bore the date October 22, 2010, Anglo Irish did not receive it until the closing on October 25, 2010. *See* Baydala Aff., ¶ 14. Therefore, there is the strong possibility that JTMERC backdated the handwritten letter in order to falsely make it appear that JTMERC had not previously agreed to Anglo Irish's application of the Escrow Deposit. This would be clear

evidence of JTMERC's bad faith and how it lulled Anglo Irish into believing that the parties had an agreement regarding the Escrow Deposit, prior to closing.

Despite the merger clause in the Agreement, Section 7.01, JTMERC's conduct in acquiescing to the application of the Escrow Deposit induced Anglo Irish's reliance upon this modification of the Agreement, and thus JTMERC is estopped from invoking the statutory requirement of writing in N.Y. General Obligations Law § 15-301(1) to bar proof of oral modification. *See Rose v. Spa Realty Associates*, 42 N.Y.2d 338 (1977) (party who actively lulled other party into thinking that oral modification had been accepted estopped from invoking statute to bar proof that written agreement had been orally modified); *Kump v. Xyvision, Inc.*, 733 F.Supp. 554 (E.D.N.Y. 1990) (dismissing plaintiff's breach of contract claim when plaintiff "actively lulled" the defendant into thinking that oral modification had been accepted).[3] Accordingly, a question of material fact exists as to what the parties' intentions were with respect to the application of the Escrow Deposit, the very heart of JTMERC's claim.

The Escrow Deposit is also nowhere referenced in the Agreement and there are no provisions discussing its impact on the Purchase Price to be paid by JTMERC. Section 2.04 of the Agreement, which JTMERC principally relies on to argue that the Escrow Deposit belongs to JTMERC, refers to "payments made by the Borrower" but plainly omits any mention of funds held in escrow, such as the Escrow Deposit. The Escrow Deposit was not received from the borrower under the Loan but rather funded by Anglo Irish out of Loan proceeds. Baydala Aff., ¶ 5. As the Agreement does not contemplate that the application of the Escrow Deposit to the

---

[3] JTMERC's heavy reliance on *Silver Air v. Aeronautic Development Corp.*, 656 F. Supp. 170 (S.D.N.Y.1987) is misplaced. Here, there is more than the "bare assertion" that the Agreement was modified. For example, Anglo Irish has presented documentary evidence indicating that JTMERC agreed with Anglo Irish's application of the Escrow Deposit. *See* Baydala Aff., Exh. B.

6

Loan balance would affect the Purchase Price, then there is no basis for JTMERC's breach of contract claim as a matter of law and summary judgment must be denied.

Moreover, as there is at least ambiguity as to the Agreement's language with respect to the Escrow Deposit, summary judgment cannot be granted in favor of JTMERC. *See Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir. 1992) ("If ambiguity is found, it must be resolved--as well as all inferences drawn--against the moving party, which has the burden of establishing that no facts material to the outcome of the litigation are in dispute."). When the language of a contract is ambiguous or open to more than one plausible interpretation, parol evidence may be considered to clarify the ambiguity. *American Federation of Grain Millers, AFL-CIO, et al. v. Int'l Multifoods Corp.*, 116 F.3d 976, 981 (2d Cir.1997) ("extrinsic evidence can be used to interpret ambiguous" contracts); *see also Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993) (When the contractual language is ambiguous, extrinsic evidence of the parties' intent is admissible.). This includes relying on the parties' course of conduct to determine their intent.[4] *See Citibank, N.A. v. 666 Fifth Ave. Ltd. Partnership*, 2 A.D.3d 331 (1st Dep't 2003). Here, the limited record before the Court shows that JTMERC's acts and omissions constituted a course of conduct consistent with the parties' intent that the Escrow Deposit be applied to the Loan balance without a reduction in the Purchase Price and therefore Anglo Irish's alleged conduct cannot constitute breach of the Agreement. There is thus a question of material fact as to whether Escrow Deposit is covered by the terms of the Agreement.

---

[4] Nor must, as JTMERC urges, any ambiguity in the Agreement be construed against Anglo Irish. JTMERC, a commercially sophisticated entity has offered no evidence and has failed to show that it had no voice in the Agreement's language. *See Citibank, N.A. v. 666 Fifth Ave. Ltd. Partnership*, 2 A.D.3d 331 (1st Dep't 2003).

7

## II. SUMMARY JUDGMENT CANNOT BE GRANTED BECAUSE THERE HAS BEEN NO DISCOVERY IN THIS CASE

Although a party may move for summary judgment "at any time," Fed. R. Civ. P. 56(b), pre-discovery summary judgment is the exception rather than the rule and will be granted "only in the clearest of cases." *Kleinman v. Vincent*, No. 90 cv. 5665, 1991 U.S. Dist. LEXIS 201, at *1 (S.D.N.Y. Jan. 8, 1991); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Under Fed. R. Civ. P. 56(d),[5] a pre-discovery summary judgment may be inappropriate where the party opposing it shows that due to inadequate discovery it cannot "present facts essential to justify [his] opposition" that could be uncovered by additional discovery. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986). In deciding whether to grant summary judgment on such a record, a court must consider:

> 1) whether the lack of discovery was in any way due to fault or delay on the part of the nonmovant; (2) whether the nonmovant filed a sufficient Rule 56(f) affidavit explaining: (i) what facts are sought and how they are to be obtained, (ii) how those facts are reasonably expected to create a genuine issue of material fact, (iii) what effort the affiant has made to obtain them, and (iv) why the affiant was unsuccessful in those efforts; and (3) whether the nonmovant provided any basis for its belief that further discovery would alter the outcome of the summary judgment motion.

*Wells Fargo Bank Northwest, N.A. v. TACA Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 360 (S.D.N.Y. 2002), citing *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996).

---

[5] Effective December 1, 2010, Fed. R. Civ. P. 56(d) replaced Fed. R. Civ. P. 56(f). Rule 56(d) now reads: "When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(f) had read: "When Affidavits Are Unavailable. If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order."

Here, the lack of discovery is not in any way due to fault or delay on the part of Anglo Irish and Anglo Irish has had no opportunity to even make efforts to obtain any discovery. *See* Baydala Aff., ¶ 15. The Complaint was filed on January 28, 2011 and Anglo Irish served its Answer on March 18, 2011. Shortly thereafter, the Court granted JTMERC's request for permission to file the present motion, before Anglo Irish could serve discovery requests. As set forth in the Baydala Affidavit, it is respectfully submitted that, through document discovery and/or depositions taken of JTMERC personnel, further evidence will emerge on the parties' understanding with respect to Anglo Irish's retention of the Escrow Deposit, further demonstrating that there is a genuine issue of material fact. JTMERC claims that the Agreement cannot be interpreted to allow Anglo Irish to retain the Escrow Deposit without crediting the Loan Purchase Price accordingly. However, Anglo Irish's communications with JTMERC demonstrate that there is a question of fact as to the parties' intention that the Agreement was modified to allow Anglo Irish to retain the Escrow Deposit. No document discovery or depositions of JTMERC representatives has occurred, which may further demonstrate their understanding, before the closing, that Anglo Irish could retain the Escrow Deposit. After reviewing such evidence and all of the allegations from *both* sides of this case, the finder of fact could reasonably conclude that the parties' agreement was that Anglo Irish could retain the Escrow Deposit. Again, additional discovery is required to determine the exact nature of the parties' communications and intentions. Accordingly, JTMERC's motion must be denied.

### III. JTMERC IS NOT ENTITLED TO ATTORNEYS' FEES

JTMERC asserts that Section 4.02 of the Agreement entitles JTMERC to "legal fees incurred by virtue of Anglo Irish's breach of warranty set forth in Section 4.01(e)." Section 4.02 states that "Seller hereby agrees to indemnify Buyer for any loss, damage, cost, expense, liability

9

or claim directly or indirectly incurred by Buyer (including reasonable attorneys' fees and expenses) as a result of a breach of any representation set forth herein." In Section 4.01(e), it is stated that the outstanding principal balance of the Loan was $15,731,480.60. As set forth above, JTMERC was not entitled to a reduction in the Purchase Price due to the Escrow Deposit being applied to the Loan balance. Further, prior to closing, JTMERC was aware that the Loan balance was reduced to $15,480,785.65 so it cannot claim that it was damaged as a result of the figure stated in the Agreement being greater than that. Also, JTMERC's primary interest was not the face amount of the Loan but rather the true underlying value of the Property. Thus, JTMERC suffered no loss as a result of the Loan balance being reduced from the $15,731,480.60 stated in the Agreement and has no claim for any form of indemnification, including its attorneys' fees. Moreover, under New York law, a court may award attorneys' fees pursuant to an agreement between the parties only when it is "unmistakably clear" that the fees claimed are covered by the agreement. *See Dolphin Direct Equity Partners, LP v. Interactive Motorsports and Entertainment Corp.*, No. 08 cv. 1558, 2009 U.S. Dist. LEXIS 21938, at *31 (S.D.N.Y. Feb. 27, 2009). JTMERC has made no such showing and, as set forth above, the facts in this case do not allow JTMERC to claim attorneys' fees under the Agreement.

## CONCLUSION

For the foregoing reasons, JTMERC's motion for summary judgment, should, in all respects, be denied.

Dated: New York, New York.
      May 31, 2011

Respectfully submitted,

TROUTMAN SANDERS LLP

By: /s/ Aurora Cassirer
    Aurora Cassirer
    Eric L. Unis
    The Chrysler Building
    405 Lexington Avenue
    New York, New York  10174
    (212) 704-6000

*Attorneys for Defendant*