UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JTMERC LLC,

               *Plaintiff,*

   -against-

ANGLO IRISH BANK CORPORATION
LIMITED,

               *Defendant.*

Case No.: 11-CIV-605 (NRB)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**LAW OFFICE OF LEE M. ALBIN**
Lee M. Albin, Esq.
666 Old Country Road, Suite 101
Garden City, New York 11530
(516) 794-4282
*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

    I.    THERE WAS NO MODIFICATION OF THE AGREEMENT ................................ 3

    II.   THE OMISSION OF THE WORDS ESCROW DEPOSIT FROM THE
          AGREEMENT DOES NOT RENDER IT AMBIGUOUS ........................................ 5

    III.  NO DISCOVERY IS WARRANTED ........................................................................ 6

    IV.  JTMERC IS ENTITLED TO ITS ATTORNEYS' FEES ........................................... 7

CONCLUSION .............................................................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**

*CSI Investment Partners II, L.P. v. Cendant Corp.*,
   507 F. Supp.2d 384 (S.D.N.Y. 2007)..................................................................................7

*E\*Trade Financial Corp. v. Deutsche Bank AG*,
   374 Fed. Appx. 119 (2d Cir. 2010)......................................................................................8

*Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*,
   No. 03 Civ. 8554, 2008 WL 465169 (S.D.N.Y. 2008) .......................................................3

*Gualandi v. Adams*,
   385 F.3d 236 (2d. Cir. 2004)...............................................................................................7

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.*,
   889 F.2d 1274 (2d Cir. 1989)..............................................................................................6

*Kump v. Xyvision, Inc.*,
   733 F. Supp. 554 (E.D.N.Y. 1990) .....................................................................................5

*L&B 57th Street, Inc. v. E.M. Blanchard, Inc.*,
   143 F.3d 88 (2d Cir. 1998)..................................................................................................4

*Merrill Lynch Interfunding, Inc. v. Argenti*,
   155 F.3d 113 (2d Cir. 1998)................................................................................................4

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Stroh Companies, Inc.*,
   265 F.3d 97 (2d Cir. 2001)..................................................................................................7

*New Bank of New England, N.A. v. Toronto-Dominion Bank*,
   768 F. Supp. 1017 (S.D.N.Y. 1991)....................................................................................6

*Paddington Partners v. Bouchard*,
   34 F.3d 1132 (2d Cir. 1994)................................................................................................7

*Rose v. Spa Realty Associates*,
   42 N.Y.2d 338 (1977) .................................................................................................3, 4, 5

*Towers Charter & Marine Corp. v. Cadillac Inc. Co.*,
   894 F.2d 516 (2d Cir. 1990)................................................................................................4

## **PRELIMINARY STATEMENT**

The plaintiff, JTMERC LLC ("JTMERC"), respectfully submits this reply memorandum of law in further support of its motion for summary judgment against the defendant, Anglo Irish Bank Corporation Limited ("Anglo Irish"), on its first cause of action as contained in its Complaint.[1]

The substantive entirety of Anglo Irish's opposition to summary judgment is that an October 7, 2010 email exchange between the parties evidences a strong indication "that JTMERC agreed that the application of the Escrow Deposit would not affect the Purchase Price."[2] However, a plain examination of the correspondence reveals that JTMERC evidenced only an acknowledgement of receipt of information provided by Anglo Irish and that JTMERC's representatives would be contacting Anglo Irish in the future.[3] There is no indication contrary to JTMERC's right under the Agreement to a credit against the Purchase Price. Absolutely nothing in the email exchange refers to the Purchase Price, a change to the Agreement, a waiver of any of its provisions or any intent by either party to modify their agreement. There is simply no evidence of any intent -- by either party -- to modify the Agreement, which expressly provides for a reduction in the Purchase Price when the balance of the Loan is reduced, as it undisputedly was when the Escrow Deposit was applied. Especially in light of JTMERC's unequivocal testimony that it was fully aware of its rights under the Agreement to a credit against the Purchase Price at all times (which right expressly survived the closing), there is no evidence to support an inference that the Agreement was modified.[4]

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in JTMERC's moving papers.
[2] *See* Anglo Irish's memorandum of law in opposition to the instant motion, at page 2.
[3] *See* Exhibit B annexed to the affidavit of Terence Baydala, sworn to on May 31, 2011 (the "Baydala Aff."), submitted in opposition to the instant motion.
[4] *See* affidavit of Jacob Toll, sworn to on May 9, 2011 (the "Toll Aff."), ¶ 12.

This dispute is ripe for summary judgment. The Agreement and its terms are not in dispute, and given that the entire transaction took place over the course of only several weeks, the "course of conduct" relied upon by Anglo Irish is before the Court for its examination. The facts simply do not support that theory, and JTMERC's motion should be granted.

## LEGAL ARGUMENT

I. **THERE WAS NO MODIFICATION OF THE AGREEMENT**

The first argument offered by Anglo Irish in an effort to avoid enforcement of the clear terms of the Agreement is that JTMERC's "acquiescence" to the application of the Escrow Deposit constituted a modification of the Agreement. However, the purported acquiescence – the mere receipt of an October 7, 2010 email from Anglo Irish without instant objection – is completely consistent with the written, unmodified terms of the Agreement. As set forth in JTMERC's underlying motion papers, the Agreement explicitly provides for a corresponding reduction in the Purchase Price in the event of a reduction in the principal balance of the Loan.[5] The Agreement does not require an objection to such a reduction, a notice to Anglo Irish, or any other action on the part of JTMERC. The right to a reduction of the Purchase Price was self-effectuating and survived closing of the Agreement.

Accordingly, Anglo Irish's reliance on *Rose v. Spa Realty Associates*, 42 N.Y.2d 338 (1977), is misplaced. The *Rose* court explicitly noted the active actions of the party against whom the oral modification was sought – and held that "[k]ey is that such conduct was not otherwise compatible with the written agreement." *Id.*, at 346. Anglo Irish has failed to point out a single act by JTMERC – other than its mere receipt of Anglo Irish's email – and has certainly not pointed to any conduct which was incompatible with the agreement. To the contrary, JTMERC refused to sign Anglo Irish's proposed amendment to the agreement and demand payment of the Escrow Deposit.[6] The very fact that Anglo Irish presented JTMERC

---

[5] *See* Section 2.04 of the Agreement.
[6] This court has stressed the requirement that a party's conduct must be at odds with the written language of the agreement to meet the requirements of Rose. *See Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, No. 03 Civ. 8554, 2008 WL 465169 (S.D.N.Y. 2008) (where conduct was not incompatible with written agreement, no basis for estoppel defense).

3

with a written amendment to the Agreement belies its argument that it had been previously modified orally or by the parties' conduct.

Furthermore, the Second Circuit has recognized that absent intent to bind a party, simple correspondence will not have the effect of modifying an agreement. *See Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 122 (2d Cir. 1998) (cover letter and enclosures insufficient to bind party). There is simply nothing in the affidavit or exhibits advanced by Anglo Irish that demonstrates any such unequivocal intent on the part of JTMERC.

Lastly, even assuming, *arguendo*, the documents advanced by Anglo Irish were sufficient to support an inference of an oral modification, that modification must be the only inference – not just a competing inference – in order to defeat summary judgment. In applying *Rose* to a commercial lease dispute, the Second Circuit stated:

> The undisputed facts show that the lease required all modifications to be in writing. To overcome that, [the party alleging the oral modification] has to show (under the Rose standard) that the only inference possible from their conduct is that an oral agreement had been concluded between the parties. In this case, the existence of a competing inference, rather than precluding summary judgment, makes summary judgment for the [party opposing the modification] appropriate. The district court correctly concluded that the alleged oral modification of the lease was unenforceable.

*L&B 57th Street, Inc. v. E.M. Blanchard, Inc.*, 143 F.3d 88, 93 (2d Cir. 1998).

The Second Circuit (again interpreting *Rose*) has applied the same requirements to an estoppel theory. "Comparable to the requirement that partial performance be unequivocally referable to the oral modification, so, too, conduct relied upon to establish estoppel must not otherwise be compatible with the agreement as written." *Towers Charter & Marine Corp. v. Cadillac Inc. Co.*, 894 F.2d 516, 522 (2d Cir. 1990) (quoting *Rose*). Although the party alleged to have "lulled" the other in *Towers* had allegedly spent millions of dollars and delayed deadlines

4

by months consistent with the alleged oral modification,[7] the Court's finding that these actions were not explicitly inconsistent with the subject agreement resulting in the alleged oral modification being "foreclosed as a matter of law." *Id.*

The second, and only other, case relied upon by Anglo Irish to support its theory that JTMERC "lulled" it into believing the parties had modified the Agreement is shockingly off point. *See Kump v. Xyvision, Inc.*, 733 F. Supp. 554 (E.D.N.Y. 1990) (dispute revolved around an *oral* agreement which did not contain a requirement that modifications be in writing, and the "partial performance" which constituting the "lulling" involved the plaintiff's relocating to a new city and accepting new employment).

Simply, Anglo Irish has failed to identify a single authority for its proposition that the mere receipt of an email (which did not even seek nor refer to any modification of the terms of the Agreement) can constitute the conduct required under *Rose*.

## II. THE OMISSION OF THE WORDS ESCROW DEPOSIT FROM THE AGREEMENT DOES NOT RENDER IT AMBIGUOUS

Anglo Irish next suggests that because the Agreement does not contain the words "Escrow Deposit", it did not contemplate JTMERC's entitlement to that sum. In fact, however, the language of the Agreement unambiguously contemplated JTMERC's entitlement to a credit in the event of "*any* payment or prepayment of principal" prior to closing.[8] It is undisputed that the Escrow Deposit was applied against the principal due under the Loan prior to closing.[9] It defies logic to suggest that the Escrow Deposit was somehow implicitly excluded from the term "any" payment of principal. Most importantly, the term "Escrow Deposit" is simply a defined

---

[7] Conduct which is far more demonstrative than that which is alleged by Anglo Irish.
[8] *See* Section 2.04 of the Agreement (emphasis added).
[9] *See* ¶ 7 of Anglo Irish's Response to Plaintiff's Local Rule 56.1 Statement.

term which was created in the context of this litigation to identify a $250,694.95 payment of principal that was received by Anglo Irish and applied against the Loan balance.

"Where, as here, the meaning of an agreement among sophisticated parties is unambiguous on its face, the agreement does not become ambiguous simply because one of the parties later asserts that it intended a different interpretation." *New Bank of New England, N.A. v. Toronto-Dominion Bank*, 768 F. Supp. 1017, 1022 (S.D.N.Y. 1991). "Nor should the court read an ambiguity into an agreement merely because one of the parties becomes dissatisfied with its position under the plain terms of the agreement." *Id.* "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation. The court is not required to find the language ambiguous where the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989).

The notion advanced by Anglo Irish – that the term "any" really means "any (except the Escrow Deposit)" is precisely the type of interpretation which should be disregarded by the Court. Section 2.04, on its face, clearly contemplated – and clearly states – that any payments and prepayments of principal would result in a credit to JTMERC against the Purchase Price.

### III. NO DISCOVERY IS WARRANTED

Anglo Irish has also failed to demonstrate what evidence it believes will be revealed during discovery that would affect the outcome of the instant summary judgment motion. If Anglo Irish itself – as JTMERC's counterparty under the Agreement – cannot articulate a single active element of JTMERC's conduct that warrants denial of the motion, it is beyond belief that any amount of discovery would do so. The affidavit submitted by JTMERC clearly states that it never modified the Agreement or waived any of its rights thereunder. No third parties have any

relevant knowledge. If facts and circumstances sufficient to avoid summary judgment by supporting the "acquiescence" theory are not known to Anglo Irish, they are not known to anyone.

Under Rule 56(f), where a nonmovant is unable to demonstrate the need for discovery, it is unnecessary. *See Gualandi v. Adams*, 385 F.3d 236, 245 (2d. Cir. 2004) (applying Rule 56(f) analysis to Rule 12(b)(1) motion). Moreover, "a district court may refuse to allow additional discovery if it deems the request to be based on speculation as to what potentially could be discovered." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Stroh Companies, Inc.*, 265 F.3d 97, 117 (2d Cir. 2001).

"A court can reject a request for discovery, even if properly and timely made through a Rule 56(f) affidavit, if it deems the request to be based upon speculation as to what potentially could be discovered. Rule 56(f) is not a shield against all summary judgment motions. Litigants seeking relief under the rule must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a [party's] allegation is in the hands of [the other party] is insufficient to justify a denial of a motion for summary judgment under Rule 56(f)." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994) (internal quotations omitted).

## IV.   JTMERC IS ENTITLED TO ITS ATTORNEYS' FEES

Finally, Anglo Irish has failed to demonstrate any portion of the subject indemnification provision which would entitle it to avoid the application of its unmistakably clear meaning.[10]

A provision providing for indemnification of a party in the event of the breach of a representation is sufficient to warrant a plaintiff's entitlement to attorneys' fees. *See, e.g., CSI Investment Partners II, L.P. v. Cendant Corp.*, 507 F. Supp.2d 384, 424 (S.D.N.Y. 2007)

---

[10] *See* Section 4.02 of the Agreement.

7

(awarding plaintiff attorneys' fees on breach of contract claim pursuant to indemnification provision). In a strikingly similar dispute concerning the calculation of a purchase price under a stock purchase agreement, the Second Circuit affirmed the award of attorneys' fees under a provision indemnifying a buyer from a breach of representation by the seller. *E*Trade Financial Corp. v. Deutsche Bank AG*, 374 Fed. Appx. 119, 123-24 (2d Cir. 2010).

## CONCLUSION

For all of the foregoing reasons, JTMERC respectfully requests that its motion for summary judgment be granted, and that an order be entered awarding it damages in the amount of the Escrow Deposit and interest thereon, along with attorneys' fees and expenses in an amount to be determined, along with such other and further relief as the Court deems proper under the circumstances.

Dated:     New York, New York
           June 13, 2011

                                    Respectfully submitted,

                                    **LAW OFFICE OF LEE M. ALBIN**
                                    *Attorneys for Plaintiff*

                                    By: _____
                                    Lee M. Albin (LA-0697)
                                    666 Old Country Road, Suite 101
                                    Garden City, New York 11530
                                    Tel.: (516) 794-4282
                                    Fax.: (516) 228-9514
                                    npfeffer@optonline.net